UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KYLE JAMES BRISTOW,

       Plaintiff,

                              Case No.  20-10752

     vs.                     HON.  GEORGE CARAM STEEH

AMERICAN NATIONAL
INSURANCE COMPANY,

       Defendant.

_____/

ORDER DENYING DEFENDANT'S MOTION TO DISMISS [ECF No. 17]

Plaintiff, Kyle James Bristow, alleges that defendant, American

National Insurance Company ("American National"), violated the Telephone

Consumer Protection Act ("TCPA") 47 U.S.C. § 227, and the accompanying

regulations prescribed by the Federal Communications Commission, by

calling his cellphone number eleven times and leaving five voicemails for

commercial purposes.  Plaintiff's Second Amended Complaint asserts one

count for violations of the TCPA.  Plaintiff alleges that defendant violated

two provisions of the TCPA: 47 U.S.C. §227(b)(1)(A)(iii) when it called

plaintiff's cellphone without prior express written consent; and 47 U.S.C.

§227(c)(5) for making unsolicited telephone calls of a commercial nature to

- 1 -

plaintiff's cellphone despite the number being registered with the National Do Not Call Registry.  The matter is before the court on defendant's motion to dismiss pursuant to Fed. R. Civ P. 12(b)(6) [ECF No. 17].  The matter is fully briefed and the Court does not believe it will be further aided by oral argument.  For the reasons stated below, defendant's motion to dismiss is denied.

<u>STATEMENT OF FACTS</u>

Plaintiff is a Michigan resident who has a cellular telephone, which he uses for personal calls, ending in -8395.  Defendant is a for-profit corporation that specializes in insurance products and services and is headquartered in Galveston, Texas.  Beginning on February 3, 2020, plaintiff began receiving telephone solicitation calls from defendant to his cellular telephone.  Plaintiff's cellphone number has been registered on the National Do Not Call Registry since November 2005.  From February 3, 2020 to February 6, 2020, plaintiff received eleven calls and five voicemails from defendant.  Plaintiff did not answer any of these calls.  The voicemails claim to be in reference to a life insurance quote.

On February 8, 2020, plaintiff placed a call to defendant.  On February 10, 2020, Derrick Jefferson, an employee of defendant, returned plaintiff's call.  During this call, plaintiff expressed to Jefferson that he did

not wish to receive the calls at issue.  Jefferson responded, "I guess what happens is once you put your information online, we don't actually call you, the system calls."  Upon learning that plaintiff did not wish to receive calls, defendant ceased placing any further calls to plaintiff's cellular phone. Musselman Decl. at ¶¶ 5-6.[1]

Defendant asserts that it never called plaintiff's phone number at random nor used a machine that dials random or sequential numbers. Musselman Decl. at ¶ 4.  Rather, defendant claims that it began calling plaintiff's phone number on February 3, 2020 in response to an application or inquiry into its products or services.  Defendant contends that on February 3, 2020, a prospective customer ("Customer") visited defendant's website and filled out a request for an insurance quote.  In the "contact" field of that online insurance request form, the Customer entered plaintiff's phone number ending in -8395.  The Customer accepted defendant's terms and conditions, including that defendant would call the Customer to provide further information as requested in the insurance quote form.  Musselman Decl. at ¶ 2.

---

[1] Michael Musselman is the Assistant Vice President – Marketing & Analytics Independent Marketing Group of American National.

Upon learning that plaintiff did not ask to be called by American National, defendant investigated.  Musselman Decl. at ¶ 8.  Defendant discovered that the Customer appears to have a phone number that is identical to plaintiff's except the last digit is one number different.  *Id*. Defendant claims that, before its February 10, 2020 call with plaintiff, it had no reason to know that the phone number the Customer entered on American National's website on February 3, 2020 was plaintiff's phone number.  Musselman Decl. at ¶¶ 10-11.

## LEGAL STANDARD

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to "state a claim to relief that is plausible on its face".  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Twombly*, 550 U.S. at 555).

## ANALYSIS

In its motion to dismiss, defendant argues several reasons that plaintiff's Second Amended Complaint fails to state a claim under 47 U.S.C. § 227(b)(1)(A). First, defendant argues that plaintiff has not plausibly alleged that an ATDS was used to call his phone number. Next, defendant contends it can show that it had express prior consent to call plaintiff's phone number, or at least permission by someone with apparent authority, and immediately ceased calling plaintiff once consent was revoked. Lastly, defendant argues that plaintiff's 47 U.S.C. §227(c)(5) claim that defendant made unsolicited telephone calls of a commercial nature to plaintiff's cellphone despite the number being registered with the National Do Not Call Registry fails due to the established business relationship exception.

I.    Use of an ATDS

The TCPA prohibits the use of an automatic telephone dialing system ("ATDS") to call someone who has not given prior consent to be called. The TCPA defines an ATDS as "equipment which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1).

Plaintiff expressly alleges that the calls defendant made to his telephone were initiated with an ATDS (ECF No. 14; Second Amended Complaint ¶¶ 1, 11, 14, 37).  In support of this assertion, plaintiff cites to a conversation he had with a representative of defendant, in which the representative explained that, "I guess what happens is once you put your information online, we don't actually call you, the system calls."  (ECF No. 14; Second Amended Complaint ¶ 32).

There is a circuit split regarding what constitutes an ATDS. The Seventh and Eleventh Circuits take a narrow view of the definition of an ATDS, giving credence to a strict grammatical reading of the statute and concluding that an ATDS must include a random or sequential number generation.  *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir.

2020).  The Second and Ninth Circuits have applied a broader definition, finding that systems, generally referred to as predictive dialers, that call from a stored list of number are sufficiently automatic to be considered an ATDS.  *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018); *Duran v. La Boom Disco, Inc*., 955 F.3d 279, (2d Cir. 2020).

On July 29, 2020, the Sixth Circuit issued an opinion expressing its agreement with the Second and Ninth Circuits, holding that that the TCPA's statutory definition of an ATDS includes telephone equipment that can automatically dial phone numbers stored in a list.  *Allan v Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 580 (6th Cir. 2020).  The Sixth Circuit did not read the statute to require that the stored numbers be randomly or sequentially generated.

The Supreme Court is poised to resolve this circuit split in the case of *Duguid v. Facebook, Inc.*  The issue before the Supreme Court is whether the definition of an ATDS in the TCPA encompasses any device that can store and automatically dial telephone numbers, even if the device does not use a random or sequential number generator.  Case No. 19-511 (cert. granted July 9, 2020, oral argument held December 8, 2020).  Until that time, this court is bound by the precedent set forth by the Sixth Circuit in *Allan*.

By pleading that the dialing system used by defendant stored his telephone number and repeatedly called the phone number, as supported by the transcript of the phone call between plaintiff and defendant's agent, plaintiff has stated a plausible cause of action under § 227(b)(1)(A)(iii) and *Allan*, 968 F.3d at 580.  Until discovery is conducted on the type of system defendant used to make the calls to plaintiff's telephone number, plaintiff would not have the ability to know the technical specifications of the system employed.  With respect to the key element of ATDS use, the plaintiff alleges defendant's agent said that "the system calls you once you put in your number."  Viewing the complaint in the light most favorable to plaintiff, the court finds that plaintiff has plausibly demonstrated that the equipment defendant used to make the calls to his telephone was an ATDS.

II.   Express Prior Consent

Next, defendant contends that it obtained plaintiff's phone number as part of a direct application for information, voluntarily and consensually. Therefore, defendant argues, it had express consent from plaintiff to make calls to his telephone number.  Furthermore, because defendant stopped calling plaintiff's phone as soon as plaintiff revoked his consent, defendant maintains that he did not violate the TCPA.

Defendant relies on *Allan* to support this argument.  In *Allan*, the plaintiffs submitted a written request for forbearance on a student loan serviced by the defendant.  In so doing, the court acknowledged that plaintiffs consented to receiving calls from defendant to their cell phones. 968 F.3d at 569.  However, this consent was subsequently revoked by the plaintiffs, and plaintiffs' allegations that defendant violated the TCPA were based only on the subsequent unconsented-to calls.  *Id*. at 570.

Defendant argues that because each of its calls to plaintiff's telephone was made after receiving consent, and that it ceased making calls after plaintiff revoked his consent, it did not violate the TCPA.  The problem with defendant's argument is that, at least at this stage of the litigation, there is no evidence that plaintiff gave his consent to receive calls from defendant.  Defendant's own investigation revealed that Customer, not plaintiff, gave consent to receive calls.  At this point, there is no evidence that Customer was authorized by plaintiff to provide consent to receive calls from defendant on his behalf.

III.   Apparent authority

Defendant alternatively asserts that the Customer had apparent authority to authorize defendant to call plaintiff's phone number. Defendant asserts that apparent authority was established because Customer asked

defendant to call plaintiff's number when it filled out an application inquiring into defendant's products. "Apparent authority must be traceable to the principal and cannot be established by the acts and conduct of the agent." *Meretta v. Peach*, 195 Mich. App. 695, 699 (1992) (citation omitted). By focusing on the acts of the Customer, defendant cannot establish apparent authority.

IV.     Established Business Relationship

Plaintiff claims that defendant also violated Section 227(c)(5) of the TCPA, which generally prohibits companies from making more than one telephone call within any twelve-month period to an individual who subscribes to the National Do Not Call registry. There is an exception to this prohibition when the parties have an established business relationship. Defendant argues that it had an established business relationship with plaintiff based on the online inquiry submitted by the Customer.

The purpose of the established business relationship is that the FCC does not desire to interfere with ongoing business relationships. See 7 F.C.C.R. 8752, 8779 n.87 (Oct. 1992). However, plaintiff has alleged that he had no prior or current business relationship with defendant (Second Amended Complaint, ¶ 13). For the same reasons that this court cannot conclude that plaintiff gave the Customer apparent authority to consent to

- 10 -

receive calls from defendant, at this pre-discovery stage of litigation the court cannot conclude that plaintiff and defendant had an established business relationship for purposes of the TCPA.

<u>CONCLUSION</u>

For the reasons stated above, defendant's motion to dismiss is denied. Defendant shall file an Answer to the Second Amended Complaint by January 18, 2021.

Dated:  January 4, 2021

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 4, 2021, by electronic and/or ordinary mail.

<u>s/Brianna Sauve</u>
Deputy Clerk

---